IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

VIKKI S. GRINDSTAFF,

        Plaintiff,

v.                                                         No. CIV 09-709 BB/LFG

MICHAEL B. DONLEY,
Secretary, Department of the Air Force,

        Defendant.


MEMORANDUM OPINION
IN SUPPORT OF ORDER ENFORCING SETTLEMENT


THIS MATTER is before the Court on Plaintiff's Motion to Enforce Settlement [doc. 30]. The Court having held oral argument on January 24, 2011, and considered all submissions of counsel, finds the Motion should be Granted.

I.    *Facts*

On July 21, 2009, Plaintiff filed a complaint pursuant to 42 U.S.C. § 2000(3) and review of a Merit Systems Review Board decision under 5 U.S.C. § 7703 alleging both discrimination and retaliation in her employment termination from the Moody Air Force Base ("AFB"). Magistrate Judge Lorenzo Garcia set the matter for a settlement conference for August 12, 2010. Toward the end of June 2010, Defendant's counsel, Assistant U.S. Attorney Michael Hoses, extended an offer of settlement to Plaintiff's counsel, Dennis Montoya. The offer was conveyed orally and consisted of the following:

**(1) the payment of $6,000.00, representing attorney's fees incurred by Plaintiff; and (2) an employment at Moody Air Force Base as a Recreation Assistant (GS-0679-4) or as a Medical Support Technician (GS-0679-4). On June 25, 2010, Mr. Montoya replied by email stating:**

> Michael -
>
> This email is to confirm that we have settled the Vikki Grindstaff case for $6,000 and my client's selection of one of the two GS-4 positions you described in our telephone conversation today, which will put her at a pay grade equivalent to the one she left at KAFB.
>
> Best Regards -
>
> Dennis

**Apparently after no communication for a week, Mr. Montoya sent another email:**

> Michael -
>
> Hope you had a happy vacation.
>
> Vikki Grindstaff would like to accept the position at the Child Care Center as part of her settlement. The position that she knows of to be open is a GS-5 Step 1, Lead Education Technician in the infant room (6 to 12 months old). This was her previous position when she was at Moody AFB.
>
> Please advise.
>
> Dennis

**At the hearing, Mr. Hoses testified that he responded to Mr. Montoya, "That's not what we agreed to."**

In August, Mr. Hoses informed Judge Garcia's office that no settlement conference was necessary as the matter was resolved. Judge Garcia then vacated the settlement conference with a minute order noting "upon advice of counsel the case had settled." In September, Mr. Hoses told Plaintiff's counsel that there were, in fact, no vacant jobs at Moody AFB for any pay grade and one of the GS-4 positions previously offered Plaintiff had never really existed at Moody AFB. Plaintiff's counsel then said she would accept $15,000.00 and the first GS-4 or GS-5 at the Moody AFB Day Care Center. On October 22, 2010, defense counsel countered by offering $16,000.00, inclusive of all costs and fees. Plaintiff rejected that offer and offered to settle for $150,000.00 and the first available GS-5 in the Moody Day Care Center. When defense counsel rejected this proposal, Plaintiff's attorney filed this motion.

II.     *Legal Standard*

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Issues involving the enforceability of settlement agreements are resolved by applying state contract law. *See United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Pertinent federal common law regarding contracts does not differ from New Mexico law. *Heuser v. Kephart*, 215 F.3d 1186, 1191 (10th Cir. 2000). "It is the policy of the law and of the State of New Mexico to favor settlement agreements." *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick*,

*Inc.*, 749 P.2d 90, 92 (N.M. 1988); *see also Bd. of Educ. for the Carlsbad Mun. Sch. v. State Dep't of Pub. Educ.*, 993 P.2d 112, 115 (N.M. App. 1999).

Under New Mexico law, "... [f]or an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.*, 961 P.2d 1283, 1286-87 (N.M. App. 1998). Equally important, once acceptance is clear, a contract is formed. *Pickett v. Miller*, 412 P.2d 400 (N.M. 1966); *Shively v. Santa Fe Preparatory Sch., Inc.*, 21 Fed. Appx. 875 (10th Cir. 2001).

### III. *Legal Argument*

Defendant argues no settlement took place because: (1) Plaintiff did not clearly accept the offer because she continued to negotiate after the June 25 email; and (2) the settlement was legally impossible because neither GS-4 position at Moody AFB was actually vacant at the time the offer was accepted.

### IV. *Existence of Settlement Agreement*

Defendant argues there could have been no settlement agreement because Plaintiff's counsel continued to negotiate after agreeing to Defendant's settlement offer of June 25, 2010. Initially, this ignores the fact that in rejecting the offer of Plaintiff's counsel to accept a GS-5 position, Mr. Hoses stated, "That's not what we agreed to." Moreover, defense counsel informed Judge Garcia's office the case had settled and he accordingly vacated the mandatory settlement conference on that basis.

**Equally important, it ignores the law that a contract is final upon the acceptance of a settlement offer.** *Alison H. v. Byard*, 163 F.3d 2, 5 (1st Cir. 1998).  **The Tenth Circuit dealt with a somewhat analogous factual situation in** *Shoels v. Klebold*, **875 F.3d 1054 (10th Cir. 2004).  That case arose out of the infamous Columbine High School shootings.  Some of the plaintiffs therein, the Shoels, settled with the parents of the shooters.  When it was discovered other plaintiffs had not settled with the Klebolds, the Shoels attempted to repudiate their settlement.  Initially, they argued that their attorney misunderstood his authority, but the court rejected that citing** *Thomas v. Colorado Trust Deed Funds, Inc.*, **366 F.2d 136, 139 (10th Cir. 1966) (there is a presumption an attorney has settlement authority unless there is clear contrary evidence in record).  The Shoels also argued their "acceptance" was only tentative because their settlement amount was to be finalized by an arbitrator.  The Tenth Circuit also rejected this claim:**

> **While the letter clearly contemplates working out a more detailed agreement, nowhere does it state that the existence of a binding contract is conditioned on successfully completing that process.  "'[T[he mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that such formal writing was executed the parol or informal contract should be without binding force.'" ... Given the non-tentative beginning of Mr. Wahlberg's letter ("The purpose of this letter is to accept the settlement proposal ...."), on balance it, too, supports the district court's conclusion. And whatever ambiguities may be read into the text now, the district court rightly resolved those ambiguities in light of Mr. Raymond's contemporaneous admission that the parties understood the April 19 settlement to be final.  Thus, whether Mr. Fieger's letter was itself meant as an acceptance, or whether it was meant to authorize Mr. Wahlberg to**

5

**settle on behalf of the Shoels, the district court's determination that there was a binding acceptance has ample record support.**

375 F.3d at 1065 (internal citations omitted).

V.     *Impossibility*

It is Defendant's position that because there was a "miscommunication" between legal counsel at Moody AFB and Assistant United States Attorney Hoses, the contract was thus legally impossible. It is Defendant's position that the GS-4 Recreation Assistant position never existed and the person holding the GS-4 Medical Support Technician did not retire as anticipated, so no opening was created. In other words, Defendant offered Plaintiff a job Defendant didn't have.

A unilateral mistake of fact is not an appropriate basis to rescind a contract under the doctrine of legal impossibility. *Praxair, Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1035 (7th Cir. 2000) (Illinois law). Even under its most liberal interpretation, the doctrine requires the promisor must show it took every possible action and the impossibility could not be altered. *Summit Props., Inc. v. Public Serv. Co. of New Mexico*, 118 P.3d 716, 727 (N.M. App. 2005). Here, Defendant apparently made the offer to give Plaintiff a GS-4 position at Moody AFB without even looking to see if such position were open or actually coming open. This is insufficient to invoke impossibility as a matter of law. *See, e.g., Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1295 (Fed. Cir. 2002). Moreover, there is no evidence Defendant cannot pay

**Plaintiff a GS-4 salary whether or not it actually provides a GS-4 position at Moody AFB.**

### *Conclusion*

**This Court finds that even more clearly than in *Shoels*, the June 25 Montoya email on behalf of his client to "confirm that we have settled the Vikki Grindstaff case," was acceptance of Defendant's June 23 offer and resulted in a binding, enforceable settlement contract. That contract must now be enforced.**

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**Chief Judge**